IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TRAVIS CRACRAFT,<br><br><br>                              Plaintiff,<br><br><br>vs.<br><br><br>UTAH VALLEY UNIVERSITY, and JARED<br>LESSER d/b/a JL HOME DESIGN,<br><br>                         Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br><br>Case No. 2:19-cv-397-TC |

Pro se plaintiff Travis Cracraft has filed suit against Defendants Utah Valley University

(UVU) and Jared Lesser dba JL Home Design,[1] asserting that he is entitled to relief under the

federal civil RICO statute.[2]  UVU filed a motion to dismiss the complaint, raising a statute of

limitations defense and challenging the sufficiency of Mr. Cracraft's pleading under Rule 9(b) of

the Federal Rules of Civil Procedure.  Mr. Cracraft, in an attempt to remedy shortcomings

identified by UVU, filed a motion to amend his complaint.[3]

---

[1] Mr. Lesser does not have any motions before the court.

[2] The Racketeer Influenced and Corrupt Organizations Act (RICO) is codified at 18 U.S.C.S §§ 1961–68 (2020).

[3] The court has determined that oral argument would not assist the court, so the court is making its decision on the briefs.  But the court will not consider Mr. Cracraft's "Reply Memorandum Supporting Plaintiff's Motion to Amend Complaint" (ECF No. 42) because he filed the brief thirty days late.  A party may not file a brief outside the time allowed by the rules unless he has permission from the court or a stipulation from the opposing party agreeing to extension of the deadline.  See Local Rule DUCivR 7-1(b)(3)(A).  Mr. Cracraft had neither.

1

The court finds that Mr. Cracraft's RICO claim, as pled, is barred by the statute of limitations.  Moreover, the allegations in the existing and proposed complaints do not satisfy the heightened pleading standards required for a civil RICO claim.  Because allowing Mr. Cracraft to file the proposed amendment would be futile, the court grants UVU's Motion to Dismiss and denies Mr. Cracraft's Motion for Leave to Amend.

## PROCEDURAL BACKGROUND

On February 22, 2019, Mr. Cracraft filed a separate lawsuit in this court against UVU and Mr. Lesser.  (See Compl. in Cracraft v. UVU, 2:19-cv-124-TC (D. Utah), ECF No. 1.)  He alleged the same civil RICO claim he asserts here.  After UVU filed a motion to dismiss the complaint in that case, Mr. Cracraft voluntarily dismissed UVU without prejudice on April 12, 2019.  (See Notice of Voluntary Dismissal in Cracraft v. UVU, 2:19-cv-124-TC (D. Utah), ECF No. 8.)  Mr. Lesser also was later dismissed without prejudice.  (See May 30, 2019 Order (granting Mr. Cracraft's request to dismiss remaining claims against Jared Lesser without prejudice) in Cracraft v. UVU, 2:19-cv-124-TC (D. Utah), ECF No. 17.)

On June 7, 2019, Mr. Cracraft filed this suit against UVU and Mr. Lesser.  His civil RICO claim is based on the very same events alleged in his February 2019 lawsuit.  Mr. Cracraft did not immediately serve the Defendants.  In fact, almost a year after he initiated this action, and in response to the court's Order to Show Cause threatening dismissal, he finally served the Defendants.  He then amended his complaint as of right.  UVU responded with the motion to dismiss at issue in this order.  Faced with another request for dismissal, Mr. Cracraft proposes a fourth version of his complaint[4] (the "Proposed Amended Complaint").

---

[4] See Compl. in 2:19-cv-124-TC (D. Utah); Compl. (ECF No. 1); Am. Compl. (ECF No. 20); Proposed Am. Compl. (ECF No. 26-1).

## FACTUAL ALLEGATIONS[5]

### The Algorithm and Patents

Mr. Cracraft was a computer science major at UVU from approximately 2003 to 2012. According to Mr. Cracraft, the events leading to this suit began in the Spring of 2003, when he took a class at UVU and described an algorithm in his answer to a quiz question.  The instructor "indicated that while novel, the algorithm had no value because of its shortcomings[.]" (Proposed Am. Compl. ¶ 2, ECF No. 26-1.)  Mr. Cracraft then asserts that "[a]n algorithm that functions nearly identical to the algorithm [he wrote in his answer to the 2003 quiz] was patented in South Korea a few months later."  (Id. ¶ 4 (emphasis added).)

He does not expressly allege who received that patent.  But his pleading suggest that Samsung obtained the patent in South Korea after purchasing the algorithm from UVU.  He alleges "that after reasonable discovery and investigation it will be shown that between" the date he took the quiz and the date the patent was issued in South Korea, "UVU entered into an agreement in which they sold, licensed, or otherwise conveyed intellectual property developed by [him] to Samsung[.]" (Id.  ¶ 5.)  And in support, Mr. Cracraft alleges that the class instructor "listed some deficiencies of the algorithm" when reviewing Mr. Cracraft's answer, and "at least one [of those deficiencies] is stated in the patent."  (Id. ¶ 2.)  This allegation suggests that the UVU instructor had a hand in drafting the South Korea patent application.

In 2008, the algorithm patented in South Korea was patented in United States Patent No. 7,437,054 (the '054 Patent).  He does not directly allege that the '054 patent was issued to

---

[5] Because Mr. Cracraft's Proposed Amended Complaint must be evaluated under the same standard of review governing the First Amended Complaint challenged by UVU, this section takes the allegations from the Proposed Amended Complaint.  That standard of review requires the court to treat the well-pleaded factual allegations as true for purposes of this order.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Samsung, UVU, or any of their representatives, but his allegations suggest that conclusion.

**Alleged Bribe**

According to Mr. Cracraft, after UVU stole his algorithm, UVU attempted to bribe him to stop criticizing UVU with comments that could hurt UVU's accreditation.  The attempted bribe consisted of inflation of his grade to an A- on a substandard paper he wrote for class.  (See Proposed Am. Compl. ¶ 7 (alleging that he was "told that [he] owed the school a favor for improving [his] grade, which was an attempted bribe.").)  He does not specify the date this attempted bribe occurred.

**Questions, Searches and Relinquishment of Intellectual Property**

In 2006, UVU issued a survey about employment, to which Mr. Cracraft responded. UVU asked where he worked, whether his employer would own intellectual property he developed, and if so, what that property would be.  Mr. Cracraft responded to the survey by discussing his employment with Defendant Jared Lesser (which is described below).

Also in 2006, Mr. Cracraft and other students were searched by UVU campus police on their way into the classroom for "ENGL 2020" ("Intermediate Technical Writing for Scientists and Engineers").  Although all students in the class were searched as they entered the classroom, Mr. Cracraft was the only one who was asked to take off his shoes.  In contrast, students in other classes down the corridor were not searched as they entered their classrooms.

After he and his classmates had settled into class, the instructor required the students to sign an agreement relinquishing intellectual property rights to work they submitted as part of their classwork.  (Id. ¶ 14.)  The instructor said that unless the student signed the document, he would not be able to pass the class.  And because "[t]his happened during the first lecture after the deadline to transfer or drop classes," Mr. Cracraft suggests that the timing of the demand

coerced the students into signing.  (Id.)  Additionally, the demand itself was coercive because a passing grade in "ENGL 2020" was a graduation requirement.

He and his classmates speculated that campus police searched the students in order to "prevent the [instructor's] demand for intellectual property from being recorded."  (Id.)  He then alleges that "[s]pecificity about this event will be added after reasonable discovery and investigation."  (Id.)

UVU made the same demand of students in online versions of the course.  Mr. Cracraft was one of those students.  "In subsequent online versions of the course, during the first session after the drop/transfer deadline, a window would appear informing [him] that if [he] were to continue, everything that [he] submitted would be the property of the school."  (Id. ¶ 15.)  "The only available option was to click 'OK.'"  (Id.)

In Spring 2011, UVU again asked Mr. Cracraft to relinquish intellectual property rights to anything created during his ENGL 2020 class.  (Id. ¶¶ 16-17.)  Students were "asked to leave all of their belongings except for paper and a pen or pencil, including their shoes, on the opposite end of the classroom."  (Id. ¶ 16.)  Mr. Cracraft and his classmates again speculated that the requirements were imposed "to prevent the demand for intellectual property from being recorded."  (Id.)  To support that admittedly speculative explanation for the instructor's actions, Mr. Cracraft says "[s]pecificity of this event will be added after reasonable discovery and investigation."  (Id.)

Mr. Cracraft characterizes UVU's demands from ENGL 2020 students as "a pattern of intellectual property theft by extortion[.]"  (Id. ¶ 18.)  In a catch-all allegation, Mr. Cracraft asserts that:

> [a]fter reasonable discovery and investigation, it will be shown that UVU injured others in a similar manner as it did me [referring to UVU's alleged theft of his

intellectual property].  It is most likely that other instances similar to [UVU's alleged agreement with Samsung] also occurred around 2006. <u>The information obtained will fulfill the pattern and specification requirements necessary to satisfy the conditions of a RICO claim.</u>

(<u>Id.</u> ¶ 30 (emphasis added).)

### Interactions with Jared Lesser of JL Home Design

From 2004 to 2007, Mr. Cracraft was employed by Jared Lesser through JL Home Design.  Mr. Cracraft drew house plans for Mr. Lesser.  In 2006, Mr. Lesser required Mr. Cracraft to sign over any intellectual property he may have created for JL Home Design (Mr. Cracraft understood that property to be drawings) during his time as an employee, or at least that is what Mr. Lesser said.[6]  Mr. Lesser also required the agreement to be "back-dated to 'anytime in 2002.'"  (<u>Id.</u> ¶ 8.)

Mr. Cracraft says that "[a]fter reasonable discovery and investigation, it will be shown that Mr. Lesser" (1) fraudulently represented to either UVU or Samsung that he owned the intellectual property rights to the algorithm, and (2) entered into an agreement with either UVU or Samsung in which he sold, licensed, or otherwise conveyed those rights.  (<u>Id.</u> ¶ 10.)  He does not say when that occurred.

Mr. Cracraft implies that Mr. Lesser intended to (and did) surreptitiously use the back-dated agreement to misrepresent his ownership to either UVU or Samsung.  He also concludes that Mr. Lesser received money from the transaction because Mr. Lesser told Mr. Cracraft in 2007 that he had purchased a house for cash.

Mr. Cracraft does not explain how Mr. Lesser—who was not involved with Mr. Cracraft's education at UVU and who employed Mr. Cracraft from 2004 to 2007—learned of the

---

[6] Around that time, UVU issued the survey (discussed above) asking about employment and intellectual property rights.  Mr. Cracraft, when asked about the type of intellectual property he created at his job with Mr. Lesser, he responded "Drawings Only."  (Proposed Am. Compl. ¶ 9.)

2003 algorithm, understood its value, knew about Samsung's or UVU's interest in the algorithm, and sold it to UVU or Samsung.  If Mr. Cracraft is alleging that Mr. Lesser was involved with the transfer of rights that were stolen in 2003, the timing is puzzling (Mr. Cracraft did not begin working for Mr. Lesser until 2004).  If Mr. Cracraft is alleging that Mr. Lesser was involved with the transfer of rights that were patented in 2008, that is also puzzling given his allegation that Samsung received the algorithm in 2003.

**Meeting with Daniel Van Woerkom**

In March 2012, as Mr. Cracraft neared graduation, he received an email from Daniel Van Woerkom.  The email address came from the email server called "legal.uvu.edu."  Mr. Van Woerkom misrepresented that he was an attorney at the Utah Attorney General's Office and told Mr. Cracraft that he had to attend a meeting on March 9, 2012.  He was told come alone.

Mr. Cracraft followed the instructions.  He met with Mr. Van Woerkom in a "dimly lit room" and was told that "UVU wouldn't graduate students who believed that the school had done anything illegal."  (Id. ¶ 21.)   At that point, Mr. Cracraft "was led to believe that if [he] didn't sign something [he] couldn't read in that dimly lit room, right then, that [he] wouldn't be able to graduate."  (Id.)

Mr. Cracraft signed the document even though he could not read it.  Although he did not read the document and does not have a copy of it, he alleges that, "[a]fter reasonable investigation and discovery, this document will be found to be an affidavit that" was backdated to March 9, 2002, and took the form of an affidavit described in the federal regulations governing patent applications.  (See id. (citing patent regulations at 37 C.F.R. §§ 1.131,[7]

---

[7] Section 1.131 is titled "Affidavit or declaration of prior invention or to disqualify commonly owned patent or published application as prior art."  It says that "[w]hen any claim of an application or a patent under reexamination is rejected, the inventor of the subject matter of the

1.132[8]).)  He does not indicate when he realized the document must have been an affidavit and he does not explain how, having never seen the document, he plausibly suspects it was a backdated affidavit conforming to specific requirements laid out in the patent regulations.

He asserts that Mr. Van Woerkom's veiled threat to block graduation if he did not sign the document was extortion.  He admits that Mr. Van Woerkom was not associated with UVU (id. ¶ 27), but he does suggest a conspiracy.[9]

On April 6, 2016, approximately four years after the meeting, Mr. Cracraft emailed the UVU General Counsel's Office, asking about the meeting he had with Mr. Van Woerkom and the document he signed.  The next day, UVU responded that Mr. Van Woerkom was not a representative of UVU and that UVU had no knowledge of the meeting or the document.  Later, in an April 25, 2016 e-mail, UVU further responded that "Daniel Van Woerkom has never worked for the Attorney General's Office or for UVU, nor has he had any connection with UVU – especially not as a legal representative or handling any legal matters for UVU."  (Id. ¶ 26.)

Despite UVU's response that Mr. Van Woerkom was not associated with UVU in any way, and despite Mr. Cracraft's admission that "Mr. Van Woerkom … didn't work for or with UVU or the Attorney General" (Id. ¶ 27), he asserts that UVU or the Utah Attorney General's

---

rejected claim, the owner of the patent under reexamination, or the party qualified under § 1.42 or § 1.46, may submit an appropriate oath or declaration to establish invention of the subject matter of the rejected claim prior to the effective date of the reference or activity on which the rejection is based."  37 C.F.R. § 1.131(a).

[8] Section 1.132 is titled "Affidavits or declarations traversing rejections or objections."  The regulation provides that "[w]hen any claim of an application or a patent under reexamination is rejected or objected to, any evidence submitted to traverse the rejection or objection on a basis not otherwise provided for must be by way of an oath or declaration under this section."  37 C.F.R. § 1.132.

[9] He also alleges that Mr. Van Woerkom and Mr. Lesser, who is accused of stealing the algorithm, are linked because Mr. Van Woerkom did legal research for Mr. Lesser.  But he does not allege that Mr. Van Woerkom's contact with Mr. Lesser concerned UVU, Mr. Cracraft, or the algorithm.

office "must have intentionally given Mr. Van Woerkom … an email account … for the purpose of committing wire fraud to lure [him] to a meeting where [Mr. Van Woerkom] would use the color of authority loaned to him by his email address … to extort a signature from [him]."  (Id.) He does not explain how he reaches that conclusion.

According to Mr. Cracraft, the meeting "not only demonstrate[s] knowledge of guilt, but that even '9 years after the algorithm was described' they were still endeavoring to hide [the theft] from [him]."  (Id.)

## ANALYSIS

Mr. Cracraft claims that UVU violated the civil RICO statute through the predicate acts of intellectual property theft, bribery, extortion, and wire fraud.[10]  UVU asserts that Mr. Cracraft's RICO claim is barred by the four-year statute of limitations and that allegations in both the existing and proposed complaints do not state a cause of action or satisfy the heightened pleading standard governing RICO actions.

### A.  Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires a court to dismiss a complaint when it fails to "state a claim upon which relief may be granted."  When reviewing a complaint, the court must take all well-pleaded factual allegations as true, only looking within the four corners of the complaint.[11]  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  But

---

[10] As UVU points out, Mr. Cracraft's First Amended Complaint could have been construed to articulate other claims (such as a patent-related claim or a state law claim of extortion) in addition to a civil RICO claim.  But given the newest version of his complaint, it is clear he is only bringing a RICO claim.

[11] In reviewing a motion to dismiss, the court generally must rely on the facts alleged in the complaint.  But in certain circumstances, it may also rely on documents adopted by reference in the complaint, documents attached to the complaint, or facts that may be judicially noticed.  See Fed. R. Civ. P. 10(c); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322–23 (2007). For instance, the court may take judicial notice of a court docket and filings.  See St. Louis

"the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The factual allegations must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

But because Mr. Cracraft alleges a civil RICO claim, the Rule 9(b) heightened pleading standard applies. Farlow v. Peat, Marwick, Mitchell & Co., 956 F.2d 982, 989 (10th Cir. 1992). "Under Rule 9(b), plaintiffs must sufficiently allege each element of a RICO violation and its predicate acts of racketeering with particularity, a requirement justified by the 'threat of treble damages and injury to reputation.'" Id. at 989 (quoting Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1362 (10th Cir. 1989)).

On a motion to dismiss, a pro se litigant's pleadings are liberally construed. Casanova v. Ulibarri, 595 F.3d 1120, 1125 (10th Cir. 2010). However, this liberal construction does not "relieve a pro se plaintiff of his burden to present sufficient facts to state a legally cognizable claim, nor will the court act as his advocate and make his arguments for him." Tatten v. City & Cty. of Denver, 730 F. App'x 620, 624 (10th Cir. 2018), cert. denied sub nom. Tatten v. City & Cty. of Denver, Colo., No. 18-595, 2019 WL 113177 (U.S. Jan. 7, 2019). Further, "*pro se* status does not excuse the obligation of any litigant to comply with the fundamental requirements" of the Federal Rules of Civil Procedure in composing a proper complaint. Ogden v. San Juan Cty.,

---

Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). Here, the court may consider the docket of the previous lawsuit Mr. Cracraft filed and the patents.

32 F.3d 452, 455 (10th Cir. 1994).

As for the standard for granting permission to amend a complaint, it is lenient. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The purpose of [Rule 15] is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982)).

But denying leave to amend is justified if the amendment would be futile. Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1151 (10th Cir. 2013); Castleglen, Inc. v. Resolution Trust Corp., 984 F.2d 1571, 1585 (10th Cir. 1993) (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Childers v. Indep. Sch. Dist. No. 1 of Bryan Cty., 676 F.2d 1338, 1343 (10th Cir.1982)). To determine whether it would be futile to allow Mr. Cracraft to file his proposed second amended complaint, the court applies the Rule 12(b)(6) and Rule 9(b) standards governing motions to dismiss. Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007) (applying Rule 12(b)(6) standard to determine whether proposed amendment would be futile).

**B. Civil RICO Claim**

RICO "provides a private right of action in federal court for individuals injured in their business or property through fraudulent conduct." Robert L. Kroenlein Trust v. Kirchhefer, 764 F.3d 1268, 1275 (10th Cir. 2014). RICO prohibits "conducting an enterprise's affairs through a pattern of racketeering activity." Klehr v. A.O. Smith Corp., 521 U.S. 179, 183 (1997) (citing 18 U.S.C. § 1962).

To state a civil RICO cause of action, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473

U.S. 479, 496 (1985).  "'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as any act

which is indictable under federal law….  These underlying acts are referred to as predicate acts,

because they form the basis for liability under RICO."  Tal v. Hogan, 453 F.3d 1244, 1261 (10th

Cir. 2006) (internal cite and quotation marks omitted).  A plaintiff must allege at least two

predicate acts.  Klehr, 521 U.S. at 183.

> 1.      Statute of Limitations

UVU asserts that Mr. Cracraft's claim is barred by RICO's statute of limitations.[12]  The

statute of limitations for a civil RICO claim is four years.  Rotella v. Wood, 528 U.S. 549, 552

(2000).

In general, a limitations period begins to accrue "when the injury occurs, even if

undiscovered."  Kroenlein, 764 F.3d at 1275.  But in some circumstances, this "injury-

occurrence" rule is supplanted by a narrow exception referred to as the "injury-discovery rule,"

which applies where the injury was not immediately clear (for instance, when it was fraudulently

concealed by the defendant).  Rotella, 528 U.S. at 555–56.

The United States Supreme Court has not established an accrual rule for RICO.  In

Rotella, it addressed the issue, but the Court "explicitly refused to 'settle upon a final rule,'

because the merits of the injury-occurrence rule had not been adequately presented to the Court."

Kroenlein, 764 F.3d at 1276.

---

[12] An assertion by a defendant that plaintiff's claims are time-barred is an affirmative defense. But "when the dates given in the complaint make clear that the right sued upon has been extinguished," then a statute of limitations defense may be resolved on a Rule 12(b)(6) motion to dismiss.  Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).  Mr. Cracraft alleges specific dates in his Proposed Amended Complaint, so the court will address UVU's statute-of-limitations defense.

After Rotella was decided, the Tenth Circuit addressed the civil RICO statute-of-limitations issue in Robert L. Kroenlein Trust v. Kirchhefer, 764 F.3d 1268 (10th Cir. 2014). Citing Rotella, the appellate court discussed whether the injury-discovery exception applies to a civil RICO claim. But, as the Supreme Court did in Rotella, the Tenth Circuit declined to decide the issue because the plaintiff's claims were barred under both the injury-occurrence rule and the injury-discovery rule. Id. at 1277. Instead, it provided alternative analyses and found that the plaintiff's claims were barred even under the more forgiving injury-discovery rule. Here, just as in Kroenlein, Mr. Cracraft's claims have expired under both accrual rules, so the court need not decide which accrual rule applies.

There is little dispute that under the injury-occurrence rule, Mr. Cracraft's claims are time-barred. Under that rule, a plaintiff's claim begins to accrue when he is injured. A civil RICO injury occurs when the plaintiff is harmed by the predicate acts constituting racketeering activity. Id.

Based on a review of Mr. Cracraft's allegations and the inferences that can be drawn from them, it appears he is alleging four predicate acts: theft of intellectual property, bribery, extortion, and wire fraud. These acts occurred between 2003 and 2012.

First, he says he was harmed in 2003 when UVU sold the rights to Mr. Cracraft's algorithm to Samsung. Second, UVU attempted to bribe him by giving him an inflated grade so he would not criticize UVU and harm UVU's accreditation. Although Mr. Cracraft does not specify when this event occurred, his allegations suggest that it took place sometime before 2012. Third, at an unspecified date, Mr. Lesser entered into an agreement with UVU to sell those rights or, alternatively, he entered into an agreement with Samsung to sell the rights. Although he seems to allege that the agreement occurred in 2003, the complaint is not clear. But

even if the transaction occurred at a later date, it took place sometime before 2012.  Fourth, he asserts that he was harmed when United States Patent '054 was issued in 2008.  And, finally, Mr. Cracraft alleges that in 2012, Mr. Van Woerkom misrepresented in an email that he was an attorney for UVU, and committed extortion when he forced Mr. Cracraft to sign the document in order to avoid denial of his right to graduate.

At best, his injury occurred in 2012, seven years before he filed this suit.  Under the injury-occurrence rule, Mr. Cracraft's 2019 complaint was three years too late.  Accordingly, Mr. Cracraft must rely on the injury-discovery rule to avoid dismissal.  But even under the injury-discovery rule, Mr. Cracraft's claims are time-barred.

The <u>Kroenlein</u> court described the parameters of the injury-discovery rule, stating that in "exceptional cases," the statute of limitations would not begin to accrue when the injury occurred.  <u>Kroenlein</u>, 764 F.3d at 1277.  To benefit from the exception, the plaintiff must show that a "reasonably diligent plaintiff could not immediately know of the injury and its cause."  <u>Cannon v. United States</u>, 338 F.3d 1183, 1190 (10th Cir. 2003), <u>quoted in</u> <u>Kroenlein</u>, 764 F.3d at 1276.  This rule "protects plaintiffs who are blamelessly unaware of their claim because the injury has not yet manifested itself or because the facts establishing a causal link between the injury and the cause of the injury are in the control of the tortfeasor or otherwise not evident."  <u>Kroenlein</u>, 764 F.3d at 1277 (internal citations and quotation marks omitted).

The Tenth Circuit explained that "we ask not only when a plaintiff actually discovers his injury, but <u>also when a reasonably diligent plaintiff would have discovered the injury</u>."  <u>Id.</u> at 1279 (emphasis added).  In other words, the limitations period begins to accrue when the plaintiff had either actual or inquiry notice of the injury.  <u>Id.</u> at 1280.  Under this objective standard, "'[a] plaintiff is on inquiry notice whenever circumstances exist that would lead a

reasonable [plaintiff] of ordinary intelligence, through the exercise of reasonable due diligence, to discover his or her injury.'" Id. (quoting Mathews v. Kidder, Peabody & Co., Inc., 260 F.3d 239, 251 (3d Cir. 2001)).  The question is whether Mr. Cracraft's allegations show that he discovered his injury, or would have discovered it through reasonable diligence, more than four years before June 2019.

Mr. Cracraft asserts that he did not discover the injury until 2016 when he questioned UVU about his 2012 meeting with Mr. Van Woerkom and the document he signed.  But the allegations show that Mr. Cracraft was on inquiry notice earlier than that.

Inquiry notice arises when the plaintiff is aware of the possibility that he has been injured.  See Ebrahimi v. E.F. Hutton & Co., Inc., 852 F.2d 516, 523 (10th Cir. 1988) ("Inquiry notice is triggered by evidence of the *possibility* of fraud; it does not require full exposition of the fraud itself.") (emphasis added); Kroenlein, 764 F.3d at 1280 ("[A] plaintiff need not know all the elements required to bring a legal claim under civil RICO to start the limitations period running.").

As early as 2003, Mr. Cracraft submitted a novel algorithm to his instructor in an answer to a quiz.  Between 2006 and 2011, Mr. Cracraft and his fellow students were required multiple times to relinquish their intellectual property rights to submissions in a writing class.  They were told that if they did not agree to the request, they would receive a failing grade in a class required for graduation.  Also, in connection with the relinquishment of rights, he and other students were searched in 2006 and again in 2011 on their way into the writing class.  Once he was singled out and subjected to a stricter search.  And after each search, he and his fellow students suspected the searches were UVU's attempt to suppress evidence of intellectual property theft and that the timing of the request was designed to extort their signatures.

15

In 2006, Mr. Lesser required that Mr. Cracraft relinquish intellectual property rights in work submitted as part of his job at JL Home Design.  The document he signed at Mr. Lesser's request was backdated to 2002.

In 2006, UVU asked Mr. Cracraft in a survey about where he worked, whether his employer could own intellectual property he developed, and if so, what that property would be.

Later, in 2007, he learned that his employer Jared Lesser received a lump sum of money that allowed him to pay cash for a house.  Mr. Cracraft implies that such a large payment was unusual for his former employer.  He alleges that Mr. Lesser's cash infusion must be explained by Mr. Lesser's alleged misappropriation of Mr. Cracraft's algorithm.

In 2012, a person who said he was working on behalf of UVU and the Utah Attorney General's Office told Mr. Cracraft to attend a one-on-one meeting with him.  The mandatory meeting took place in a "dimly lit room" where Mr. Van Woerkom vaguely but effectively indicated that if Mr. Cracraft did not sign a document (which Mr. Cracraft could not read but signed anyway), he would not be allowed to graduate.

These were red flags.  He had reason to suspect theft of his intellectual property as early as 2006, when the UVU campus police searched ENGL 2020 students, or, at the latest, 2011, when a similar search occurred.  He and his classmates speculated that UVU's search was an attempt to hide evidence of its extortion of intellectual property rights from students.  And he knew he had submitted a novel algorithm in 2003.  The combination of events—submitting an algorithm recognized by the UVU instructor as novel, UVU's attempted bribe, Mr. Lesser's 2006 demand for a back-dated relinquishment of intellectual property, UVU's 2006 surveys asking him about his intellectual property interests with other employers, Mr. Lesser's 2007 surprising statement that he purchased a house with cash, searches giving rise to suspicions of a pattern of

extortion to obtain students' intellectual property, and the 2012 meeting with Mr. Van

Woerkom—put him on inquiry notice no later than 2012.

At that point, Mr. Cracraft had a duty to diligently investigate.  "Once a plaintiff has

inquiry notice of facts that would suggest to a reasonable person that he has been injured, the

plaintiff has a duty to commence a diligent investigation concerning that injury."  Kroenlein, 764

F.3d at 1280.  But Mr. Cracraft waited years to act.  He did nothing until 2016 when he made a

single inquiry of UVU.  Without a diligent investigation, the four-year statute of limitations

begins to accrue at the time that duty arose.  "[W]hen a RICO plaintiff 'makes no inquiry once

the duty arises, knowledge will be imputed as of the date the duty arose.'"  Id. (quoting Koch v.

Christie's Int'l PLC, 699 F.3d 141, 153 (2d Cir. 2012)).  Consequently, the statute expired in

2016 at the latest, and his 2019 civil RICO claim against UVU is time-barred under the injury-

discovery rule.

2.    Sufficiency of Pleading

Even if Mr. Cracraft's claim is not time-barred, it must be dismissed because he has not

satisfied the pleading standards.

To survive a motion to dismiss, a plaintiff bringing a civil RICO cause of action must

allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).  "Racketeering activity" means

committing at least two of the indictable predicate acts listed in 18 U.S.C. § 1961(1)(B).  Bridge

v. Phoenix Bond & Indem. Co., 553 U.S. 639, 647; Tal v. Hogan, 453 F.3d 1244, 1261 (10th Cir.

2006).  Each element must be pleaded with the particularity required by Rule 9(b).  Farlow, 956

F.2d at 989.

Mr. Cracraft has not complied with Rule 9(b) in large part because he relies heavily on

suspicions that he claims will be confirmed after discovery.  Suspicion and theories do not satisfy Rule 9(b), particularly in the civil RICO context.  The strict pleading requirement for RICO is "justified by 'the threat of treble damages and injury to reputation.'"  Id. (quoting <u>Cayman Exploration Corp. v. United Gas Pipe Line</u>, 873 F.2d 1357, 1362 (10th Cir. 1989)).

To fill the pleading gaps prohibited by the particularity requirement, Mr. Cracraft relies on Federal Rule of Civil Procedure 11(b)(3), which allows a plaintiff in limited circumstances to rely on "information and belief" to establish certain allegations.  That rule requires a party filing a pleading to certify "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [that] <u>the factual contentions</u> have evidentiary support or, <u>if specifically so identified,</u> <u>will likely have evidentiary support after a reasonable opportunity for further investigation or discovery</u>[.]"  Fed. R. Civ. P. 11(b)(3) (emphasis added).

His "information and belief" allegations extend to (a) the 2003 agreement between UVU and Samsung (the predicate act of intellectual property theft); (b) his and his classmates' speculation about the reason for the searches of students in the ENGL 2020 class (this relates to the predicate act of extortion); (c) Mr. Lesser's agreement with UVU and/or Samsung (the predicate act of intellectual property theft that is pleaded in the alternative); and (d) the contents of the document he signed in 2012 (relating to the predicate act of extortion and theft of intellectual property).

His allegations regarding the document he signed in the presence of Mr. Van Woerkom are problematic.  He did not read it.  Given that fact, Mr. Cracraft's complaint does not adequately allege why he believes the document was a back-dated affidavit written to

18

incorporate specific requirements of the patent regulations.

As for the searches, he admits that the theory is based on speculation.

But more importantly, entire transactions between UVU, Samsung, and Mr. Lesser (i.e., the predicate acts of intellectual property theft) are based on information and belief. Concerning the alleged 2003 agreement between UVU and Samsung, he says that "after reasonable discovery and investigation it will be shown that between" the date he took the quiz and the date the patent was issued in South Korea, "UVU entered into an agreement in which they sold, licensed, or otherwise conveyed intellectual property developed by [him] to Samsung[.]" (Proposed Am. Compl. ¶ 5.) He does the same for the agreement between Mr. Lesser and UVU and/or Samsung. (See id. ¶ 10.)

Mr. Cracraft argues that all of that information was concealed from him by the parties and so he "'cannot be expected to have personal knowledge of the facts constituting the wrongdoing.'" Lochead, 697 F. Supp. at 416 (quoting Zatkin v. Primuth, 551 F. Supp. 39, 42 (S.D. Cal.1982)). But Rule 11's allowance for allegations based on "information and belief" is not "a license to join parties, make claims, or present defenses without any factual basis or justification," particularly when the claim is a civil RICO claim. Fed. R. Civ. P. 11(b)(3), Advisory Committee Notes (1993 Amendment) (emphasis added). "[A] plaintiff may not use discovery to flesh out details of a claim" and "may not justify a failure to plead fraud with specificity by arguing that he cannot meet the standards of Rule 9(b) without discovery." Lochead, 697 F. Supp. at 415; accord Farlow, 956 F.2d at 990. Mr. Cracraft says he will establish that factual basis after he gets discovery. He may not do that in a civil RICO claim, particularly because, as pointed out in the statute-of-limitations analysis, he did no investigation until 2016, and even then, only made one inquiry to UVU. He has not justified his reliance on

Rule 11(b)(3).  And without that, he has not pleaded the predicate acts necessary to state a civil RICO claim.[13]

       3.    <u>Conclusion</u>

Because this is Mr. Cracraft's fourth attempt to state his civil RICO claim against UVU, the court declines to give him yet another chance to articulate his claim.  "Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint 'a moving target'" or "to present 'theories seriatim' in an effort to avoid dismissal[.]"  <u>Minter v. Prime Equip. Co.</u>, 451 F.3d 1196, 1206 (10th Cir. 2006) (quoting <u>Viernow v. Euripides Dev. Corp.</u>, 157 F.3d 785, 800 (10th Cir. 1998), and <u>Pallottino v. City of Rio Rancho</u>, 31 F.3d 1023, 1027 (10th Cir. 1994), respectively).  <u>See also</u> <u>Fed. Ins. Co. v. Gates Learjet Corp.</u>, 823 F.2d 383, 387 (10th Cir. 1987) ("Courts have denied leave to amend in situations where the moving party cannot demonstrate excusable neglect.  For example, courts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.").  Accordingly, the court grants the motion to dismiss Mr. Cracraft's claim against UVU with prejudice.

<b><u>ORDER</u></b>

For the foregoing reasons, Defendant UVU's Motion to Dismiss (ECF No. 22) is

---

[13] Mr. Cracraft appears to rely on four different types of predicate acts.  The intellectual property theft and extortion are the central ones, and, as discussed above, are not adequately pled.  The other two—bribery and wire fraud—are not sufficient by themselves to establish two predicate acts.  The RICO statute defines "racketeering" to include bribery criminalized by state law, bribery under 18 U.S.C. § 201 (bribery of a public official or a witness testifying under oath in a trial, hearing, or other official proceeding), and 18 U.S.C. § 224 (bribery in sporting contexts).  Mr. Cracraft alleges that someone from UVU gave him an inflated grade in the hope that he would refrain from publicly criticizing UVU.  That does not satisfy the bribery definitions in the federal criminal code.  If he is not relying on federal law, he must plead the source of state law.  But he has not done so.  The court will not guess under which state law, if any, he wants to proceed.  Left with wire fraud, he has, at best, alleged one predicate act.

GRANTED and Plaintiff Travis Cracraft's Motion to Amend Complaint (ECF No. 26) is

DENIED.

DATED this 19th day of October, 2020.

BY THE COURT:

_Tena Campbell_

TENA CAMPBELL
U.S. District Court Judge